FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2002 FEB 28  P 12: 49

|                              |   |                           |
|------------------------------|---|---------------------------|
| RICKY HOCKENSMITH            | : | AT BALTIMORE              |
|                              | : |                           |
| v.                           | : | CIVIL NO. L-00-2647 DEPUTY |
|                              | : |                           |
| STEVE CROMER, et al.         | : |                           |

## MEMORANDUM

On August 30, 2000, Plaintiff, Ricky Hockensmith, filed suit against Kelly Cromer,

Officer Steve Cromer, Officer Wayne Hose, the Hagerstown City Police Department

("Hagerstown Police"), and the City of Hagerstown. The Complaint alleges the following counts

against various Defendants: (i) malicious prosecution, (ii) civil conspiracy, (iii) false

imprisonment, (iv) battery, (v) freedom of speech violation, and (vi) intentional infliction of

emotional distress. On July 3, 2001, Defendants filed Motions for Summary Judgment. Because

the Motions have been fully briefed, the Court will dispense with a hearing. See Local Rule

105.6 (D. Md. 1999). For the following reasons, the Court shall, by separate Order, GRANT

Defendants' Motions for Summary Judgment and CLOSE the CASE.

I.    **Factual Background**:

This case arises out of a running battle between Mr. Hockensmith and other individuals

regarding the management of the National Little League ("NLL") in Hagerstown, Maryland.

Hockensmith's children played on an NLL team, and he was the manager of the NLL's minor

division. The battle appears to have escalated when Defendant Kelly Cromer became President

of the NLL. Hockensmith argues that a faction within the NLL improperly plotted to oust the

previous President and replace him with Ms. Cromer. Mr. Hockensmith disagreed with the

ouster of the previous president and believed that Ms. Cromer and her faction were mismanaging the NLL.

During an NLL game on May 16, 1998, Mr. Hockensmith became involved in a dispute with parents during a game regarding the management of his team.[1]  Apparently, the board of directors of the NLL was sitting behind Hockensmith's dugout, offering suggestions on how he should manage his team, and Hockensmith asked them to be quiet.  On May 18, 1998, the NLL held a meeting regarding the dispute, providing Hockensmith an opportunity to be heard.  On May 21, 1998, the NLL issued a written warning to Hockensmith regarding his behavior.

On June 27, 1998, Hockensmith, acting as a coach for an NLL team, refused to let his players take the field, and a dispute arose between Hockensmith and other parents over whether the game should be continued, canceled, or rescheduled.   As a result of the June 27th incident, on July 30, 1998, the NLL's Board of Directors informed Hockensmith by letter that it had "voted to terminate [his] membership at [NLL] as a manager, coach, umpire, and regular member . . ."[2]  The Board stated that his membership had been terminated "based upon many factors including . . . misconduct and manipulation of the rules, the players, and the Members of the [NLL] during and after the game on June 27, 1998 and the discord you have caused through out the league all season."[3]

Hockensmith did not take his termination lying own.  Following his termination, Hockensmith wrote letters to the newspaper editor, distributed anti-Cromer fliers, and mounted a

---

[1]     Defendant Kelly Cromer's Motion for Summary Judgment, Exhibit 5.

[2]     Id. at Exhibit 8.

[3]     Id.

2

petition drive to oust Ms. Cromer. On deposition, Hockensmith explained that in his view, Ms. Cromer "does not have values and principles that . . . are important to little league baseball."[4] Also on deposition, he claimed that Ms. Cromer is an "avowed witch."[5]

Eventually, in a letter dated May 29, 1999, the NLL advised Hockensmith that he was banned from the NLL's property at Staley Park.[6] The letter stated that if he trespassed on the property, the NLL would contact the police to remove him and possibly press charges.

On June 18, 1999, in spite of the NLL's letter, Hockensmith went to the NLL's property at Staley Park and sat in the bleachers. Defendant Steve Cromer, husband of Defendant Kelly Cromer, approached Hockensmith in the bleachers and said: "You know I'm a police officer, you're making this tough on me."[7] He then asked Hockensmith whether he was going to leave. Hockensmith responded: "No, I'm going to watch my son play ball."[8]

At this point, Defendant Steve Cromer asked someone in the press box to notify the police. Defendant Officer Wayne Hose eventually arrived at the NLL ballfield. Upon his arrival, Defendant Hose was handed the May 29th letter banning Hockensmith from the property.

---

[4]     Id. at Exhibit 9.

[5]     Id.

[6]     The property in question is a ballfield in Staley Park, which is owned by the City of Hagerstown. On April 12, 1999, the NLL entered into a User Agreement with the City of Hagerstown for use of the property. The agreement provides that the NLL is granted "exclusive use" of the property- meaning that "the User is the sole user of the Premises" and "User may secure the Premises and control use of the Premises." Defendant Kelly Cromer's Motion for Summary Judgment, Exhibit 1.

[7]     Defendant Kelly Cromer's Motion for Summary Judgment, Exhibit 23.

[8]     Defendants' Motion for Summary Judgment, Exhibit 6.

Defendant Hose approached Hockensmith and asked if he was going to honor the NLL's letter. Hockensmith responded that he intended to stay and watch his son play ball. Defendant Hose informed Hockensmith that if he did not leave, he would be arrested. Hockensmith told Defendant Hose, "to do what you have to do."[9] At this point, Defendant Hose placed Plaintiff under arrest for trespass.

Hockensmith was tried before the District Court of Washington County and convicted of trespass. Hockensmith appealed his conviction to the Circuit Court. Eventually, the charges were dropped with the entry of a disposition of *nolle prosequi* on the record.

On August 31, 2000, Hockensmith filed suit against the defendants in the Circuit Court for Washington County. On September 1, 2000, Defendant City of Hagerstown removed the case to this Court pursuant to federal question jurisdiction under 28 U.S.C. § 1331. The Complaint alleged the following counts against the various Defendants: (i) malicious prosecution (as to Kelly Cromer and Steve Cromer); (ii) civil conspiracy (as to Kelly Cromer and Steve Cromer); (iii) false imprisonment (as to Steve Cromer and Wayne Hose); (iv) battery (as to Wayne Hose); (v) freedom of speech violations (as to Steve Cromer, Wayne Hose, Hagerstown Police, and City of Hagerstown);[10] and (vi) intentional infliction of emotional distress (as to Kelly Cromer and Steve Cromer).

On July 3, 2001, following discovery, Defendants filed Motions for Summary Judgment.

---

[9]     Defendant Kelly Cromer's Motion for Summary Judgment, Exhibit 27.

[10]    While the Complaint does not specifically reference 42 U.S.C. §1983, it appears that Hockensmith contends that Defendants Steve Cromer and the City of Hagerstown were acting under the color of law when the alleged free speech violations took place.

4

II    **Summary Judgment Standard**:

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

III.    **Discussion**:

In Plaintiff's Opposition to Defendants' motions for summary judgment, he requests that the Court grant Defendant Kelly Cromer's Motion for Summary Judgment on the intentional infliction of emotional distress claim in Count VI. Accordingly, the Court hereby GRANTS Defendant Kelly Cromer's Motion for Summary Judgment on Count VI.

Additionally, Plaintiff requests that the Court grant Defendant Hose's Motion for Summary Judgment on all counts. Accordingly the Court hereby GRANTS Defendant Hose's Motion for Summary Judgment.

Plaintiff also requests in his Opposition that the Court dismiss the counts against the City of Hagerstown Police Department because it is not a legal entity capable of being sued.

5

Accordingly, the Court hereby GRANTS Defendant Police Department's Motion for Summary Judgment.

      A.    **Malicious Prosecution**:

Count I of Hockensmith's Complaint alleges a claim for malicious prosecution against

Defendants Kelly Cromer and Steve Cromer.  To establish a claim for malicious prosecution,

Hockensmith must prove the following four elements: (i) that Defendants instituted the criminal

proceeding against him; (ii) the criminal proceeding terminated in his favor; (iii) there was an

absence of probable cause for the proceeding; and (iv) that Defendants acted with malice.  Okwa

v. Harper, 360 Md. 161, 757 A.2d 118 (2000); Krashes v. White, 275 Md. 549, 341 A.2d 118

(2000).  Hockensmith fails, however, to establish a claim for malicious prosecution against Kelly

Cromer or Steve Cromer because there was probable cause for his arrest for trespass.

Maryland law provides that "[a] person may not remain on, enter on, or cross over the

land, premises, or private property . . . after being duly notified by the owner or the owner's

agent not to do so."  Md. Code Ann., Art. 27, § 164 (1957).  Hockensmith was informed in the

May 29th letter that he was banned from the property.  Under the User Agreement, the NLL was

granted "exclusive use" of the property and was therefore allowed to secure and control use of

the property.  Hockensmith does not argue that the NLL lacked the power to ban individuals

from the Park pursuant to the User Agreement, but instead makes the conclusory statement that

the ban on him was "invalid, an improper device formulated and utilized by Defendants Steve

Cromer and Kelly Cromer."  Plaintiff's Opposition, September 10, 2001.

Hockensmith did not, however, litigate the propriety of the particular ban on him, but

instead entered the NLL's property in direct violation of the May 29th letter.  In response, the

police were called, Officer Hose gave Hockensmith the opportunity to leave, Hockensmith

refused to leave, and he was arrested. Based upon the aforementioned facts, the Court finds that

probable cause existed for Hockensmith's arrest for trespass. Accordingly, Plaintiff's claim for

malicious prosecution against Kelly Cromer and Steve Cromer must fail.

B.    **False Imprisonment**:

In Count III, Plaintiff alleges a false imprisonment claim against Defendant Steve

Cromer. In order to establish a claim of false imprisonment, Hockensmith must establish "that

he was deprived of his liberty without [his] consent and without legal justification." Tavakoli-

Nouri v. State, 139 Md. 716, 726, 779 A.2d 992, 998 (2001) (internal citations omitted).

However, as discussed supra Part A, the Court finds that there was probable cause, and thus legal

justification, for Hockensmith's arrest. Accordingly, Plaintiff's false imprisonment claim must

fail.

C.    **Freedom of Expression Claims**:

In Count V of the Complaint, Plaintiff alleges that Defendants Steve Cromer and the City

of Hagerstown violated the First Amendment of the United States Constitution and Article 40[11]

of the Maryland Declaration of Rights.[12]  While the language of the Complaint is unclear,

Hockensmith appears to contend that Steve Cromer, while acting in his capacity as a Hagerstown

---

[11]    Count V of the Complaint actually alleges that Defendants violated Article 26 of
the Maryland Declaration of Rights, which protects against unreasonable search and seizure.
Based upon Hockensmith's allegations, however, the Court believes that he intended to allege a
violation of Article 40 of the Maryland Declaration of Rights, which protects freedom of
expression. Accordingly, the Court has interpreted Plaintiff's allegations of violation of Article
26 as allegations of violation of Article 40.

[12]    The "guaranty of freedom of speech under Art. 40 is substantially similar to that
enunciated in the First Amendment and should not be interpreted differently." The Pack Shack,
Inc. v. Howard County, 138 Md. 59, 68 n.2, 770 A.2d 1028, 1033 n.2 (2001).

7

police officer, banned him from Staley Park for exercising his First Amendment rights and enforced the illegal ban by having Hockensmith arrested. Further, Hockensmith appears to contend that the City of Hagerstown is liable "for the actions of its employee, Officer Steven Cromer."

In opposing Defendants' Motion for Summary Judgment, Hockensmith does not discuss these free speech claims, other than to say that "there are material facts in dispute." Based upon the papers before the Court, Hockensmith's claims against Steve Cromer and the City of Hagerstown under Count V must fail.

### 1.    **Steve Cromer**:

First, Hockensmith has produced no evidence that Steve Cromer was acting in his official capacity as a police officer either (i) when the NLL management banned Hockensmith from the Park, or (ii) when Hockensmith was arrested.[13]   Specifically, Hockensmith has failed to provide evidence to suggest that Mr. Cromer played any role whatsoever (either as a police officer or a private citizen) in the NLL's decision to ban Hockensmith from Staley Park.[14]   Additionally, on the night that Hockensmith was arrested, Mr. Cromer did not arrest Hockensmith, but simply asked someone in the press box to call the police.

---

[13]    Steve Cromer is potentially liable under this Count only if he was acting in his official capacity because the First Amendment and Article 40 protect against infringement by governmental actors, not private actors.

[14]    Hockensmith makes no effort to raise, establish, or analyze the issue of whether it was permissible or impermissible for the City to delegate management of Staley Park to the NLL. Accordingly, the Court declines to address this issue.

8

Second, when Hockensmith was arrested, it was not for leafleting or exercising his First Amendment rights, but it was for violating the NLL's letter of May 29th, banning him from Staley Park. As discussed supra Part A, the Court finds that there was probable cause for Hockensmith's arrest.

2.    **City of Hagerstown**:

Plaintiff's claim against the City of Hagerstown also fails. Hockensmith appears to claim that the City is liable under section 1983 for the unconstitutional "actions of its employee, Officer Steven Cromer." Plaintiff's Memorandum, September 10, 2001. However, a municipality may not be held liable on a *respondeat superior* theory, but may only be sued for its own unconstitutional or illegal policies. See Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978). Because Hockensmith has failed to point to any policy or custom of the City of Hagerstown that caused his "injury," Count V against the City of Hagerstown cannot stand.

D.    **Intentional Infliction of Emotional Distress**:

Count VI alleges a claim for intentional infliction of emotional distress against Defendant Steve Cromer. In order to establish a claim for intentional infliction of emotional distress, Hockensmith must prove that (i) Steve Cromer engaged in intentional or reckless conduct, (ii) the conduct was extreme and outrageous, (iii) there is a causal connection between the wrongful conduct and the emotional distress, and (iii) the emotional distress is severe. Manikhi v. Mass Transit Administration, et al., 127 Md.App. 497, 533, 733 A.2d 372, 392 (1999).

Intentional infliction of emotional distress is a unique claim that is difficult to prove. See Borchers v. Hrychuk, 126 Md.App. 10, 19, 727 A.2d 388, 392 (1999). In order "[f]or

9

conduct to meet the test of 'outrageousness,' it must be so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community."  Penhollow v. Board of Commisioners for Cecil County, et al., 116 Md.App. 265,

297, 695 A.2d 1268, 1285 (1997) (quoting Batson v. Shiflett, 325 Md. 684, 602 A.2d 1191

(1992)).  Hockensmith has failed to allege any specific conduct of Steve Cromer that even

approaches the level of "outrageous behavior."  Hockensmith's conclusory statements, without

more, is insufficient to support a claim for intentional infliction of emotional distress.

Accordingly, Plaintiff's claim Under Count VI must fail.

      E.    **Civil Conspiracy**:

     In Count II, Hockensmith alleges that Steve Cromer and Kelly Cromer conspired to

prevent him "from entering Staley Park to watch his children play little league baseball and to

otherwise humiliate . . . [him] in direct retaliation to [his] efforts to elect new board for the

[NLL]."  Complaint at ¶15.  Specifically, Hockensmith states that Defendants conspired to

unlawfully interfere with his right of freedom of expression and to maliciously prosecute him for

exercising that right.  Plaintiff's Opposition to Kelly Cromer's Motion for Summary Judgment at

¶8.

     To establish a civil conspiracy, Hockensmith would need to show that two or more

people (i) had an agreement, (ii) to "accomplish an unlawful act or to use unlawful means to

accomplish an act not in itself illegal," and (iii) that the act resulted in damages to Plaintiff.

Allen v. Bethlehem Steel Corp., 76 Md. App. 642, 653, 547 A.2d 1105, 1111 (1988).

     Hockensmith has shown no evidence of an agreement, other than his own belief that

Kelly Cromer and Steve Cromer collaborated against him.  Hockensmith's beliefs, without more,

10

are insufficient to establish a claim of civil conspiracy. Furthermore, because Hockensmith's

malicious prosecution and First Amendment claims both fail, see supra Parts A & C, Plaintiff has

failed to allege an unlawful act as required to demonstrate a claim for civil conspiracy.

Accordingly, Plaintiff's claim for civil conspiracy is without merit.

**IV. Conclusion**

For the reasons stated above, this Court shall, by separate Order, GRANT Defendant

Kelly Cromer's Motion for Summary Judgment and GRANT Defendants Steve Cromer, Wayne

Hose, Hagerstown Police, and City of Hagerstown's Motion for Summary Judgment.

Dated this 27th day of February, 2002.

Benson Everett Legg
United States District Judge

11